NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2019 IL App (4th) 170564-U

NO. 4-17-0564

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 9, 2019
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Adams County |
| COBRETTI MATLICK, | ) | No. 14CF440 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Robert K. Adrian |
| | ) | Judge Presiding |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The appellate court found this court lacks jurisdiction to consider defendant's claims regarding the trial court dismissal of his *pro se* petition for post-conviction relief and affirms the trial court's denial of defendant's motion for leave to file a successive postconviction petition.

¶ 2    On May 7, 2015 defendant, Cobretti Matlick entered a negotiated plea of guilty to attempt (first degree murder) in exchange for the dismissal of five other charges and a specific sentence of 20 years in the Illinois Department of Corrections. On August 17, 2015, defendant filed a *pro se* postconviction petition, which was dismissed by the trial court on October 27, 2015, as frivolous and patently without merit.

¶ 3    On December 3, 2015, defendant filed an unsigned document captioned "Motion to request," which was dismissed by the trial court. On May 8, 2017, defendant filed a series of documents, including a "Motion for Leave to File Successive Post-Conviction Pursuant to 725

ILCS 5/122-1(f)," a "Petition for Post-Conviction," and a "Declaration of Cobretti Matlick In Support of His State Post Conviction Petition." On May 17, 2017, the trial court denied the motion. Defendant filed a notice of appeal on July 26, 2017, arguing this court should allow defendant to file a late notice of appeal from the dismissal of his 2015 *pro se* postconviction petition and the trial court erred in denying him leave to file a successive petition. We dismiss for lack of jurisdiction and affirm the denial of defendant's motion for leave to file a successive postconviction petition.

¶ 4                                    I. BACKGROUND

¶ 5         In August 2014, defendant was charged in a six-count amended information with the offenses of attempt (first degree murder) (720 ILCS 5/8-4(c)(1)(A) (West 2014)), a Class X, enhanced sentence felony; conspiracy to commit (aggravated kidnapping) (720 ILCS 5/8-2(a) (West 2014)), a Class 1 felony; attempt (aggravated kidnapping) (720 ILCS 5/8-4(a) (West 2014)), a Class 1 felony; aggravated battery (720 ILCS 5/12-3.05(d)(4)(i) (West 2014)), a Class 1 felony; attempt (escape) (720 ILCS 5/8-4(a) (West 2014)), a Class 2 felony; and conspiracy to commit (escape) (720 ILCS 5/8-2(a) (West 2014)), a Class 3 felony. The charges arose from an admitted plot between defendant and two other inmates to take a correctional officer hostage in order to effectuate an escape from the Adams County, Illinois, jail. During the unsuccessful effort to escape, defendant attacked an officer with a sharpened toothbrush, stabbing him above the left ear and the back of the head.

¶ 6         In September 2014, defendant's counsel requested a fitness evaluation. After defendant was found fit by the examining psychologist, counsel formally withdrew any question of defendant's fitness in October 2014 and began pretrial preparation. In the interim, defendant, who had previously entered a plea of guilty on an unrelated retail theft and aggravated battery

case, was sentenced to concurrent penitentiary sentences of two and three years, respectively. After numerous continuances by defense counsel, at the previously scheduled final pretrial hearing in March 2015, with defendant present in person, his counsel noted the filing of a motion to continue, a motion for appointment of expert and declaration of defendant as indigent, and the affirmative defense of insanity. Counsel indicated he had been in discussions with the State regarding either asserting an insanity defense or negotiating a plea of guilty but mentally ill (720 ILCS 5/6-2 (West 2014)). Defendant's counsel also filed a motion for fees for expert witness, seeking an order from the trial court requiring the county to provide funds for an expert witness based on defendant's indigency. The State objected, contending defendant lived at home with his parents, who retained private counsel to represent him, and, therefore, he was not "indigent." The court found defendant, who was previously found fit, was not entitled to the payment of expert witness fees by the county when he had privately retained counsel.

¶ 7        Defendant's counsel requested a one-month continuance to investigate several options and on May 7, 2015, defendant entered a negotiated plea for a specific sentence of 20 years on one count of attempt (first degree murder) with the remaining five counts being dismissed. During the Illinois Supreme Court Rule 402 (eff. July 1, 2012) admonishments, defendant was informed and acknowledged his sentence would be consecutive to the one he was already serving at the time, and the Truth-In-Sentencing statute guidelines (730 ILCS 5/3-6-3(2)(ii) (West 2014)) would require him to serve 85% of his time. A restitution amount was ordered, which is not relevant to this appeal. Defendant acknowledged the various medications he was currently taking and the trial court explained:

> "THE COURT: The reason I'm asking is because you are about to make a
> very big decision today and I want to make sure you are thinking clearly.

THE DEFENDANT: Okay

THE COURT: Do you think you are thinking clearly?

THE DEFENDANT: Yes, I do, sir.

THE COURT: Is that your sense, Mr. Timmerwilke [defendant's counsel]?

MR. TIMMERWILKE: Yes, Your Honor.

THE COURT: And you have had an opportunity to speak with him today?

MR. TIMMERWILKE: Yes.

THE COURT: It would appear to the court as well."

¶ 8　　　　The trial court then inquired about defendant's educational background, and proceeded to read and explain the charge as well as the applicable penalties, including mandatory supervised release, 85% sentencing, and the consecutive nature of the sentence to be served in relation to the sentence he was already serving. After this explanation, the court asked: "Do you have any questions at all about what the charge is or the possible range of penalties?" to which defendant responded, "[n]ope."

¶ 9　　　　The trial court proceeded to outline each of the various rights defendant had, asking and obtaining an acknowledgement from defendant that he understood them. The court further noted the various rulings it made during the pendency of the case and specifically referenced the request for expert witness funds and the court's denial, pointing out to defendant: "If you plead guilty here today, you basically give up your right to complain about my ruling. Do you understand that?" Defendant responded, "[y]es sir." Explaining further, the court said, "Okay. In effect, you're just going with—the court's decision. Do you understand that?" Defendant responded, "[y]es".

- 4 -

¶ 10    Defendant was asked if he authorized his attorney to negotiate a plea on his behalf and whether he was satisfied with his attorney. Defendant responded affirmatively to both questions. After reiterating the terms of the plea agreement and resultant sentence, the trial court inquired:

"THE COURT: Is that your understanding of the negotiations?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about this at all?

THE DEFENDANT: Nope.

THE COURT: And you've had a chance to talk about this with your attorney?

THE DEFENDANT: Yes, I have, sir.

THE COURT: Have you also discussed this with family members?

THE DEFENDANT: Yes."

¶ 11    Defendant then acknowledged no one had threatened or promised him anything other than the terms of the plea as negotiated. After the State outlined the factual basis, defendant's counsel agreed it was consistent with the State's evidence. The court then asked defendant directly, "[Defendant], has Mr. Barnard [(the prosecutor)] accurately described what you did?" Defendant responded, "[y]es, he did, sir."

¶ 12    As part of the plea, defendant waived an updated presentence report and was sentenced *instanter*. The trial court heard from the State regarding defendant's previous convictions and adjudications, defense counsel presented no evidence, and defendant's statement in allocution was, "I wish I could have did [*sic*] better things in my life instead of ruining it like this, but I guess I didn't make good choices." The court then imposed the agreed sentence of 20

years, stating, "[a]nd 20 years is a very long sentence for someone your age, but it's appropriate given what it is that you did." Defendant responded: "[y]es, you're right, sir, it is." The court informed defendant of his appeal rights.

¶ 13　　　　No postplea motion or appeal was ever filed. On August 17, 2015, over three months after the plea and sentencing, defendant filed, *pro se*, a "Section 122-1 Postconviction Petition" alleging, *inter alia*, ineffective assistance of privately retained counsel as a result of his alleged failure to file a notice of appeal "and to otherwise cause an appeal to be perfected" on his behalf. Defendant also claimed counsel failed to "investigate the circumstances of the alleged offense(s)," "pursue any Defense(s) [*sic*] or lesser-included offenses available for [defendant] such as insanity, Guilty But Mentally Ill, or Aggravated Battery of a common person," or to "challenge the Attempt statute—720 ILCS 5/8-4—for constitutionality and/or the validity of a conviction for this type of conduct inherent in and [*sic*] 'Attempt'."

¶ 14　　　　Defendant further alleged his rights of due process and equal protection were violated by the State's failure "[t]o ministerially [*sic*] file a notice of appeal on behalf of [defendant] and allowed his counsel to do the same." Defendant also contended his constitutional rights were violated by allowing him to plead guilty although he was a "mentally ill person with a low intelligence quotient," not permitting him adequate access to legal materials before and after conviction, and because he was "actually innocent" of the charge.

¶ 15　　　　Included with the petition was a document entitled "Declaration of Cobretti Matlick in support of State Postconviction Petition," wherein defendant indicated, among other things, he wished to withdraw his guilty plea, and he told of his mental and physical health history, his plans for the future, and his lack of access to programs at Menard Correctional Center. The document was neither sworn nor notarized.

¶ 16          On October 27, 2015, the trial court dismissed the petition as frivolous and patently without merit, noting the petition was not supported by affidavit or other evidence nor did it include an explanation for why none were attached in violation of section 122-2 of the Post-Conviction Hearing Act (Postconviction Act) (725 ILCS 5/122-2 (West 2014)). The clerk mailed a copy of the notice to defendant pursuant to Illinois Supreme Court Rule 651(b) (eff. Feb. 6, 2013) the following day.

¶ 17          On December 3, 2015, a document titled "Motion to Request" was filed with the clerk. The case number is identified as Adams County Case No. 14-CV-440 but is contained in the common law record for this case. In the document, defendant asks to file an appeal in the misnumbered case and alleges defendant told his retained counsel to "file this said case above, to the court of appeal [*sic*], in the Illinois Appellate Court." Further within the document, defendant says he is "requesting this Honorable Court, to file this request of appeal. To the Illinois Supreme Court." Although the document has a designated place for defendant to sign above his hand-printed name, registration number, and correctional facility address, it is unsigned.

¶ 18          On December 8, 2015, the trial court entered the following order:

> "Defendant having filed a pro se motion, but the motion is not
> signed by Defendant, motion is hereby dismissed. Clerk to send
> defendant a copy of this order."

¶ 19          There are no other filings until 17 months later when, on May 8, 2017, defendant filed a group of documents including: "Motion for Leave to File Successive Post-Conviction [*sic*]," "Petition for Post-Conviction," "Declaration of Cobretti Matlick In Support of His State Post Conviction Petition," and "Motion for Appointment of Counsel." On June 5, 2017,

defendant also filed an application to sue as a poor person along with the standardized state form for application for waiver of court fees.

¶ 20       On July 18, 2017, the trial court entered a written order denying defendant's motion for leave to file a successive postconviction petition, finding defendant's explanation for failing to attach affidavits to his previous petition was not legally sufficient and the proposed successive petition failed to allege "a gist of a constitutional claim." The clerk sent a copy of the notice to defendant on July 19, 2017. Defendant then filed a timely notice of appeal of the court's July 18, 2017, order.

¶ 21                                   II. ANALYSIS

¶ 22                          A. Claimed Notice of Appeal

¶ 23       On appeal, defendant contends he should be permitted to file a late notice of appeal and fully appeal the dismissal of his 2015 petition because of the alleged ministerial error by the circuit clerk. He contends the circuit clerk's office failed to recognize his "Motion to Request" as a request to file a notice of appeal pursuant to Illinois Supreme Court Rule 606(a) (eff. Dec. 11, 2014). The State's argument is two-fold: (a) defendant's "motion" was nevertheless untimely as a request to file a notice of appeal and defendant failed to properly pursue the filing of a late notice of appeal as provided in Illinois Supreme Court Rule 606(c) (eff. Dec. 11, 2014) and (b) the "motion" could not reasonably be interpreted as a request for appeal. It contends this court does not have jurisdiction. We agree with the State.

¶ 24       "[T]he ascertainment of its own jurisdiction is one of the two most important tasks of an appellate court panel when beginning the review of a case." *People v. Smith*, 228 Ill. 2d 95, 106, 885 N.E.2d 1053, 1059 (2008). As the State points out in their brief, "[t]he timely filing of a notice of appeal is both jurisdictional and mandatory." *Secura Insurance Co. v. Illinois*

*Farmers Insurance Co.*, 232 Ill. 2d 209, 213, 902 N.E.2d 662, 664 (2009). Our supreme court reiterated the importance of a timely notice in *People v. Patrick*, 2011 IL 111666, ¶ 20, 960 N.E.2d 1114:

> "The timely filing of a notice of appeal is the only jurisdictional step for initiating appellate review [Citation.] If there is no properly filed notice of appeal, the reviewing court lacks jurisdiction and must dismiss the appeal. [Citation.]"

¶ 25        The time for filing a notice of appeal is governed by supreme court rules which, as the court has emphasized, " 'have the force of law, and the presumption must be that they will be obeyed and enforced as written.' " *Estate of Roth v. Illinois Farmers Insurance Co.*, 202 Ill. 2d 490, 494, 782 N.E.2d 212, 215 (2002) (quoting *Bright v. Dicke*, 166 Ill. 2d 204, 210, 652 N.E.2d 275, 278 (1995)).

¶ 26        Defendant contends the failure to file a notice of appeal was due to the deficiency of the circuit clerk's office. Instead, from the record before us, the failure lies with defendant as he filed nothing within 30 days of the entry of the trial court's order dismissing the *pro se* postconviction petition, as required under Illinois Supreme Court Rule 606(b) (eff. Dec. 11, 2014). Defendant attempts to raise a new issue in his reply brief by implying the clerk's office sent the notice of the adverse ruling to the wrong post office box within the Menard Correctional Facility. However, there was no claim in defendant's "Motion to Request" he did not have timely notice of the court's ruling on October 27, 2015, nor does he allege untimely notice in any subsequent pleading or in his opening brief. "Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7)

(eff. May 25, 2018); see also *Cooke v. Illinois State Board of Elections*, 2019 IL App (4th) 180502, ¶ 83 , ___ N.E.3d ___.

¶ 27     The State accurately notes defendant had other remedies available to address the failure to file a notice of appeal within the 30 days provided by Illinois Supreme Court Rule 606(c) (eff. Dec. 11, 2014). The record is clear defendant was properly admonished of his appeal rights at the time of his plea on May 7, 2015. He neither sought to withdraw his plea nor file a notice of appeal within 30 days. Defendant obviously knew sometime before August 17, 2015, just over three months after sentencing, no appeal had been filed. Rule 606(c) would have permitted defendant to file a motion in the appellate court "supported by a showing of reasonable excuse for failing to file a notice of appeal on time" within 60 days of the entry of his plea and sentencing. Ill. S. Ct. R. 606(c) (eff. Dec. 11, 2014). Defendant could also have filed a motion in the appellate court, accompanied by a section 1-109 (735 ILCS 5/1-109 (West 2014)) certification showing "that there is merit to the appeal and that the failure to file a notice of appeal on time was not due to appellant's culpable negligence" within six months of the expiration time for filing a notice of appeal. Ill. S. Ct. R. 606(c) (eff. Dec. 11, 2014).

¶ 28     Defendant's section 122-1 postconviction petition does not purport to be such a motion, nor does it contain a sworn affidavit or section 1-109 certification as required by Rule 606(c). Further, defendant's "Declaration" accompanying the petition makes no attempt to allege either merit to the appeal or explanation for failure to file a timely notice of appeal, and instead, seeks to withdraw his plea. As a result, none of defendant's filings could arguably constitute a claim for application of the extension provisions of Rule 606(c). Where no effort is made to file a timely notice of appeal or for leave to file a late notice of appeal, the appellate court is without jurisdiction to consider the trial court's ruling. See *People v. Taylor*, 57 Ill. App. 3d 29, 31, 372

N.E.2d 988, 989-90 (1978). " '[T]he appellate court does not have authority to excuse the filing requirements of the supreme court rules governing appeals.' " *People v. Salem*, 2016 IL 118693, ¶ 19, 47 N.E.3d 997 (quoting *Secura Insurance Co*., 232 Ill. 2d at 217-18).

¶ 29 Equally significant, even if the "Motion to Request" was timely filed as to the dismissal of the postconviction petition, it did not, as claimed by defendant on appeal, seek to appeal the trial court's ruling of October 27, 2015, dismissing defendant's initial postconviction petition. Instead, a plain reading of the "Motion" indicates defendant seeks a direct appeal of his original conviction based upon his plea of guilty on May 7, 2015, some five months earlier. The motion makes no reference to the *pro se* postconviction petition but refers instead to retained counsel and his plea of guilty. As such, it fails to meet any of the requirements for a late notice of appeal under Rule 606(c). "A notice of appeal confers jurisdiction on the reviewing court to consider only the judgments or pertinent parts specified in the notice." *Patrick*, 2011 IL 111666, ¶ 21. Even giving defendant's "notice" the liberal reading to which it is entitled (*Smith*, 228 Ill. 2d at 104), it will only be considered sufficient "when it fairly and adequately sets out the judgment complained of and the relief sought." (Internal quotation marks omitted.) *Smith*, 228 Ill. 2d at 105. The failure here is not merely one of form. As the court said in *Smith*, the notice "failed to apprise the State of the nature of the appeal. The notice, as it appears in the record, failed to confer jurisdiction on the appellate court to hear defendant's appeal." *Smith*, 228 Ill. 2d at 105.

¶ 30 Having failed to file a timely and properly framed notice of appeal, defendant was not able to appeal the dismissal of his *pro se* postconviction petition, even if that was his intent, and this court is without jurisdiction to hear an appeal therefrom.

¶ 31        On a side note, counsel on appeal seeks to label the State's postconviction "Statement of Facts" as an "improperly filed" "responsive pleading" related to defendant's *pro se* petition as part of his claim the first petition was dismissed in error. We can take judicial notice of the fact instead, as argued by the State, a document is required under section 5-4-1(d) (730 ILCS 5/5-4-1(d) (West 2014)) whenever a defendant is committed to the Department of Corrections. Illinois Rule of Evidence 201(c) (eff. Jan. 1, 2011) permits the court to take judicial notice whether requested or not and reviewing courts "may take judicial notice of the Department of Corrections' records because they are public documents." *People v. Vaughn*, 2011 IL App (1st) 092834, ¶ 47, 961 N.E.2d 887. In addition, it is a public document contained within the court file of which the court may also take judicial notice. See *Lavite v. Dunstan*, 2019 IL App (5th) 170114, ¶ 69, __ N.E.3d __ ("Judicial notice is proper where the document in question is part of the public record."). Although it may have been placed in the court file between defendant's petition and the court's written order, it does not relate, in any way, to defendant's petition; nor is there any indication in either the document itself, or the trial court's ruling, it was so considered.

¶ 32                    B. Second Postconviction Petition

¶ 33        Defendant's second effort at postconviction relief came in the form of a "Motion for Leave to file Successive Post-Conviction [*sic*] Pursuant to 725 ILCS 5/122-1(F) [*sic*]", "Petition for Post-Conviction [*sic*]", and "Declaration of Cobretti Matlick in Support of his State Post Conviction Petition filed in May, 2017."

¶ 34        Interestingly, contrary to his claim on appeal, defendant did not claim in his motion, petition, or "declaration" he ever intended to appeal the dismissal of his *pro se* petition or that the trial court erred in denying it for the reasons stated. Instead, defendant's motion

focused on his mental illness and medications as an explanation for the deficiencies leading to the dismissal of the *pro se* petition in 2015. The petition itself relates only to his original conviction and the alleged failure of retained counsel: (1) to pursue an appeal, (2) to investigate the charges, (3) to pursue defenses of insanity or guilty but mentally ill or a lesser charge, (4) to challenge the constitutionality of the attempt statute, or (5) to permit him to plead guilty while he was mentally ill, as well as (6) the failure of the State to "ministerially [*sic*] file a notice of appeal on [his] behalf," (7) a denial of adequate access to legal materials before and after conviction, and (8) actual innocence of the offense. Defendant's "declaration" outlines his personal and family history, mental illness, current status in the penitentiary, prescriptions, and physical condition. He also talks about the facts surrounding the attack on the correctional officer, his pleas in the other two cases, his inability to read and write well, and the fact his inmate status and current incarceration impact his access to educational opportunities. Other than the brief mention of the reasons for the attack on the correctional officer, nothing contained in the "declaration" discusses any of the legal issues he seeks to raise.

¶ 35 Section 122-1(f) of the Postconviction Act provides:

"Only one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows

- 13 -

prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2016).

¶ 36        "The Post-Conviction Hearing Act contemplates the filing of only one post-conviction petition." *People v. Flores*, 153 Ill. 2d 264, 273, 606 N.E.2d 1078, 1083 (1992). Successive petitions are highly disfavored. *People v. Edwards*, 2012 IL 111711, ¶ 29, 969 N.E.2d 829. Thus, as this court noted in *People v. Ryburn*, 2019 IL App (4th) 170779, ¶ 25, ___ N.E.3d ___, leave to file a successive petition is predicated on the defendant's ability to satisfy both the cause and prejudice tests found within the statute. See also *People v. Guerrero*, 2012 IL 112020, ¶ 15, 963 N.E.2d 909. Our review of the trial court's denial of defendant's motion for leave to file a successive postconviction petition is *de novo*. *People v. Wrice*, 2012 IL 111860, ¶ 50, 962 N.E.2d 934.

¶ 37                              1. *Cause and Prejudice*

¶ 38        In *Ryburn*, we pointed out the trial court was obligated to conduct a preliminary analysis or "screening" of defendant's motion to ascertain whether it alleged sufficient facts to demonstrate both cause and prejudice. *Ryburn*, 2019 IL App (4th) 170779, ¶ 20; see also *People v. Bailey*, 2017 IL 121450, ¶ 24, 102 N.E.3d 114. If the petitioner makes a *prima facie* showing of cause and prejudice, then leave to file the petition should be allowed and the petition would then proceed through the normal three-stage process set forth in the Postconviction Act. *Ryburn*, 2019 IL App (4th) 170779, ¶ 20 (citing *Bailey*, 2017 IL 121450, ¶ 24). "Cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim" in the previous postconviction proceeding. (Internal quotation marks omitted.) *People v.*

- 14 -

*Pitsonbarger*, 205 Ill. 2d 444, 460, 793 N.E.2d 609, 621 (2002). "Prejudice" can be shown by directing the reviewing court's attention to an error which "so infected the entire trial that the resulting conviction violates due process." (Internal quotation marks omitted.) *Flores*, 153 Ill. 2d at 279.

¶ 39       In this matter, the trial court denied the motion on two bases. Addressing defendant's explanation for his failure to attach affidavits or other supporting evidence to his 2015 petition, the trial court found ignorance of the law was not a sufficient reason. The trial court also reviewed the specific allegations of the proposed successive petition and found they failed to rise to the level of a "gist of a constitutional claim." Absent a legally justifiable basis for failing to comply with the requirements for a motion for leave to file a successive petition, defendant was required to support his allegations with sufficient documentation or references to the record to suggest a valid claim of constitutional dimension. As the supreme court found in *People v. Smith*, 2014 IL 115946, ¶ 35, 21 N.E.3d 1172,

> "leave of court to file a successive postconviction petition should
> be denied when it is clear, from a review of the successive petition
> and the documentation submitted by the petitioner, that the claims
> alleged by the petitioner fail as a matter of law or where the
> successive petition with supporting documentation is insufficient
> to justify further proceedings."

¶ 40       It was defendant's obligation to provide sufficient documentation or raise claims of sufficient magnitude to "establish cause and prejudice as to each individual claim asserted in a successive petition." *Pitsonbarger*, 205 Ill. 2d at 463. Defendant did neither. Instead, as noted by the State, defendant sought to make one argument before the trial court and then argued

- 15 -

something different on appeal. The argument presented to the trial court as cause to justify the filing of a subsequent petition was that his mental illness and medication impeded his ability to know he needed to support the original petition with affidavits or other evidence. The alleged prejudice was the denial of the petition due to the absence of any supporting affidavit. On appeal however, defendant claims it was the clerk's failure to file his notice of appeal after the trial court's dismissal of the first petition which constitutes cause. The prejudice he claims relates all the way back to the original trial court's failure to appoint an expert at the county's expense when defendant was represented by retained counsel at trial. Of course, neither of these are issues properly before this court since they were never raised before, nor is there an explanation offered for their absence from any previous petition. *People v. Jones*, 211 Ill. 2d 140, 148-49, 809 N.E.2d 1233, 1239 (2004) (allegations not raised in the postconviction petition cannot be considered on appeal). Defendant argues this is a "unique and unusual" situation. In reality, the situation is neither unique nor unusual. It is impermissible. The prohibition against addressing postconviction claims on appeal that were not raised in the initial petition is equally applicable to a successive postconviction petition. *People v. Young*, 2018 IL 122598, ¶ 28, 115 N.E.3d 194.

¶ 41    The claims raised in defendant's successive petition are nearly identical to those raised in the first, which was summarily dismissed for a failure to provide supporting affidavits or other evidence. Defendant's motion for leave to file his successive petition claims this was due to his mental illness and lack of knowledge such affidavits were needed. The "cause and prejudice" standard is more exacting than the simple "gist" standard necessary to state a claim in an initial postconviction petition. *People v. Evans*, 2013 IL 113471, ¶ 7, 989 N.E.2d 1096. A claimed ignorance of the law can never be cause. *People v. Cruz*, 2013 IL App (1st) 091944, ¶ 24,

997 N.E.2d 264 (citing *Evans*, 2013 IL 113471, ¶ 13) (defendant claiming ignorance of the law as cause for failure to assert a successive postconviction claim in his initial petition).

¶ 42         Regarding defendant's claim of "serious mental illness," the record belies the trial court was aware of what had transpired before defendant entered his guilty plea. Trial counsel's motion for fitness resulted in an evaluation finding defendant fit to stand trial and, although suffering from mental illness, defendant was fully capable of understanding the charges, the legal process, and possible outcomes, as well as cooperating with counsel. As a result, defendant's counsel withdrew any question of defendant's fitness and the court conducted a thorough questioning of defendant both at his formal arraignment on the charges and again at his plea hearing without any question raised concerning defendant's mental health status. In fact, at the time of the plea the court specifically discussed defendant's mental status and medications he was taking. The court reminded defendant that, by pleading guilty, he was giving up any right to complain about the court's denial of his motion for expert funds "to hire a psychiatrist to explore the defense of insanity."

¶ 43         While the trial court was considering defendant's claim of "cause" for failure to properly support his initial petition, defendant's assertion of being "seriously mentally ill" was undoubtedly viewed in light of all the information available to the court. This would have included comments of defendant in open court, the report of the psychiatrist, and comments defendant made to correctional officers about wanting to take the deal, how he was "not crazy," and his resistance to his counsel's suggested insanity defense. These comments were contained in defendant's motions *in limine*, which were pending at the time of the plea. In light of the record before the trial court, the written order denying defendant's motion for leave did not address defendant's mental illness claim at all. However, we are permitted to search the record to

affirm, regardless of whether it was relied upon by the trial court, and are not bound by the reasons given by the trial court for its judgment. *Gernand v. Illinois Commerce Comm'n*, 286 Ill. App. 3d 934, 943, 676 N.E.2d 1384, 1389 (1997).

¶ 44 In *People v. Montgomery*, 45 Ill. 2d 94, 95, 256 N.E.2d 802, 803 (1970), the defendant asserted his mental illness as an explanation for his delay in filing and supported his claim with psychiatric records of his mental condition during incarceration. Although the record generally indicated the defendant had a condition of mental disturbance, the supreme court, after examining the records, found there was nothing to show he was "incapable of exercising reasonable diligence in his pursuit of relief." *Montgomery*, 45 Ill. 2d at 96. *Montgomery* has been cited repeatedly as an example of how difficult it is to establish a lack of culpable negligence in pursuing postconviction relief. See *People v. Scullark*, 325 Ill. App. 3d 876, 759 N.E.2d 565 (2nd Dist. 2001); *People v. Perry*, 293 Ill. App. 3d 113, 687 N.E.2d 1095 (1st Dist. 1997); *People v. Heirens*, 271 Ill. App. 3d 392, 648 N.E.2d 260 (1st Dist. 1995); *People v. Villanueva*, 174 Ill. App. 3d 791, 529 N.E.2d 87 (4th Dist. 1988).

¶ 45 Here, defendant did not support his claim with any psychiatric records, references to the record, or even describe what it was about his "mentally ill state" that hindered his ability to properly file his *pro se* petition summarily dismissed by the trial court. As noted above, it is defendant's burden to do so, and he is held to a higher standard than the first-stage analysis for determining whether an initial petition is "frivolous and patently without merit." *Edwards*, 2012 IL 111711, ¶ 27. "To meet the cause-and-prejudice test for a successive petition requires the defendant to 'submit enough in the way of documentation to allow a circuit court to make that determination.' " *Smith*, 2014 IL 115946, ¶ 35 (citing *People v. Tidwell*, 236 Ill.2d 150, 161, 923 N.E.2d 728, 734-35 (2010)). In light of the information before the trial court from defendant's

pretrial motions, psychiatric evaluation, and observations of the defendant on multiple occasions, there was no reason for the trial court to give such a claim much consideration.

¶ 46　　　　　Having properly found defendant unable to show "cause" under the cause and prejudice requirements for leave to file a successive postconviction petition, the trial court did not even have to consider the "prejudice" component and denied the motion. See *Pitsonbarger*, 205 Ill. 2d at 464.

¶ 47　　　　　　　　　　　　　2. *Actual Innocence*

¶ 48　　　　　Lastly, defendant sought to raise "actual innocence," the alternative method by which a defendant may seek leave to file a successive postconviction petition. Unfortunately, the burden on the defendant to " 'submit enough in the way of documentation to allow a circuit court to make that determination' " is true under an "actual innocence" claim as well. *Edwards*, 2012 IL 111711, ¶ 24. The elements of a claim of actual innocence are that "the evidence in support of the claim must be newly discovered; material and not merely cumulative; and 'of such conclusive character that it would probably change the result on retrial.' [Citation.] " *People v. Ortiz*, 235 Ill. 2d 319, 333, 919 N.E.2d 941, 950 (2009). Here, once again, the argument raised on appeal is not consistent with that mentioned in the successive petition. *Young*, 2018 IL 122598, ¶ 28, (stating an appellate court "cannot address postconviction claims that are not raised in the initial petition. [Citation.] The same rule applies to a successive postconviction petition.").

¶ 49　　　　　Defendant's only argument in the successive petition was a claim the charge was not proper since his attack was not based on the victim's status as a correctional officer. On appeal, defendant seeks to argue his insanity. This was never raised before the trial court and is therefore not proper here.

¶ 50     We find the trial court did not err when denying defendant's motion for leave to file a subsequent postconviction petition.

¶ 51                               III. CONCLUSION

¶ 52     For the reasons stated we affirm the trial court's judgment.

¶ 53     Affirmed.